TotteN, J.,
delivered the opinion of the Court.
This case is an action of ejectment instituted in the Circuit Court of Claiborne, in 1845, for one hundred acres of land. At May Term, 1852, there was - judgment for defendant, and plaintiff has appealed in error to this Court.
The title exhibited by the plaintiff at the trial, consists of a copy of a grant from the State of Virginia, for five thousand acres, to Major Dowell, dated February, 8, 1796: second, a deed from said Dowell to Joseph Brock for said five thousand acres, ■ dated July 6, 1808; and third, proof that the lessors are heirs at law of said Joseph Brock.
The five thousand acre grant is located upon the State line, and between the lines known as Walker’s and Henderson’s line — a part of it being in Virginia: and a part in Tennessee. The one hundred acres in question *29 was granted by tbe State of Tennessee to the defendant, the 27th November, 1836: — it is bounded on the North by the State line, and is included in the limits of said five thousand acre grant. The Yirginia grant being offered in evidence at the trial, was rejected by the Court, and in this it is said there is error.
Ye may observe that the true boundary between Yirginia and Tennessee, being a line equi-distant between "Walter’s and Henderson’s lines, was marked and agreed upon by the agents of said States in 1802. In 1803, the Legislature of Tennessee recognising the said boundary, declared that all claims and titles derived from Yirginia for lands that have fallen into this State under and by i’eajson of said boundary treaty, should be held good and valid, as if derived from North Carolina or Tennessee. Act 1803, ch. 58; Campbell vs. Crockett, 8 Yer. R. 225.
The Act of 1811, ch. 76, requires that such grants shall be registered in the county where the land may lie; and that deeds for the same, executed and proved in the State of Yirginia, shall be so registered.
It follows, that, if this Yirginia grant be well authenticated, there is no question but that it is a valid muniment of title. But we do not think it well authenticated.
It purports to be “a copy from the records of the Yirginia Land Office,” certified by S. H. Parker, Register. The Governor of Yirginia, under the seal of the State, further attests that the person named is Register of said land office, duly appointed, and that his official acts are entitled to full faith and credit. Upon, these certificates the copy is registered in the proper county in the State.
*30 Now, if tbe Act of Congress, of 1804, be relied upon, the answer is, that the Register does not certify under his seal of office, or, if there be no seal, he omits to state that there is none. And the Governor's certificate is defective in not stating that said “attestation is in due form and by the proper officer;” his certificate being necessary, under the statute, to establish these facts.
Nor is it well proved at the common law, under the • seal of the State. The Governor’s certificate, to which the great seal is affixed, does not verify the copy or make any allusion to the grant. It simply attests the official character of the Register, leaving the verity of the copy to rest upon his certificate. The grant or the copy is not, therefore, attested under the seal of the State.
Nor are we aware of any Statute of this State under which the present copy can be read as evidence. The Statutes referred to, do not apply. The Act of 1811, ch. 76, providing that grants of this description, shall be registered, &c., and then be admitted in evidence, must be understood as requiring that they be duly authenticated before they can legally be admitted to registration. The same remark applies as well to the deeds provided for in the same statute.
Assuming that this evidence of the grant was properly rejected, it is argued in the next place, that a grant will be presumed from the lapse of time, during which the plaintiffs and their ancestor have claimed and possessed the land.
We may observe that it is a well settled rule of property, applicable to corporeal as well as incorporeal hereditaments, that a grant or other legal conveyance may be presumed, where a person claiming to be owner, *31 bas been in tbe use and possession for a period of twenty years. Homes vs. Peck's lessee, M. & Y. 228; Gilchrist vs. McGee, 9 Yer. R. 457.
This Court has adopted' the period of twenty years in conformity to English decisions, and it was adopted there in analogy to the Statute of Limitations, 21 J. 1. ch. 16.
The rule is not founded merely in policy and convenience; but it is a presumption of fact reasonably to be inferred from long and undisturbed possession and enjoyment, that the claimant had a legal and valid title at the commencement, which from lapse of time and accident, he may not be able to adduce. In such case a grant or other proper evidence of title, will be presumed, but this presumption may be repelled by proof of other facts.
Whatever will rebut the fact of an adverse possession under the statute of limitations, should, upon. principle, rebut and repel the presumption of a grant or other title, founded upon twenty years possession. It is a good objection, therefore, if it appear that the possession was by the consent and acquiescence of the true owner, or that it was accidental, and not by design and upon claim, or that it has not been continuous and unbroken for the whole time limited. Schauber vs. Jackson, 2 Wend. R. 37; Daniel vs. North, 11 East R. 372; 1 Cowper, 110.
The rule is usually applied in defence to protect the party who is in the possession and enjoyment of the property. It applies as well, however, in favor of a plaintiff, who sues for a wrongful ouster of his possession, or for other injury to his rights.
*32 But upon a careful consideration, of tbe facts in the present case, it is perfectly clear, that the possession relied upon by the plaintiffs, was not such as is required by the rule. It was not continuous, and unbroken for a period of twenty years, nor in fact, for seven years, so far as we can see from the proof. On the contrary, it appears that defendant has been in possession of the land in dispute, from the date of his grant in 1836, and perhaps longer.
There being no error in the record, the judgment will be affirmed.
Judgment affirmed.